In re SHAMROTH.

(Supreme Court, Appellate Division, First Department. February 2, 1912.)

ATTORNEY AND CLIENT (§ 44*)—DISBARMENT—MISAPPROPRIATION OF FUNDS.

An attorney, who obtained money from his client on the statement that it was necessary to deposit it to protect her interest, when it is impossible to suppose that he could believe such a deposit would protect her, and who, instead of making the deposit, at once appropriated it to his personal use, not informing her thereof, though seeing her daily, and whose only excuse is his statement that he did not think she would want it for a while, and who did not have sufficient funds to repay her, and did so, on discovery, only in installments, is guilty of misconduct for which he should be disbarred.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]

In the matter of Charles Shamroth, an attorney. Petition of the Association of the Bar of the City of New York to discipline said attorney. Respondent disbarred.

See, also, 145 App. Div. 922, 130 N. Y. Supp. 1131.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Origen S. Seymour, for petitioner.
Solon J. Liebeskind, for respondent.

INGRAHAM, P. J. The Association of the Bar of the City of New York charged the respondent with fraud, deceit, malpractice, and gross unprofessional conduct in his office as attorney and counselor at law, which were based upon two specifications: First, that the respondent had received from a client the sum of $450, to be deposited with the chamberlain of the city of New York before making an application to the courts for an injunction to restrain her landlord from interfering with her possession of certain leasehold premises, and converted it to his own use; and, second, that in a proceeding to punish a person for contempt, pending in the City Court, for the purpose of defeating the orders of the court, delaying the proceedings, and causing expense to the judgment creditor, the respondent repeatedly defaulted, procured orders from the court containing stays without notice to his adversary, gave a useless and fictitious check, and used various other means to prevent the creditor obtaining his rights and remedies.

The proceedings were referred to a referee, who has reported that the first charge was sustained, but that the second charge was not. In relation to the first charge the referee reports:

"There is no substantial conflict of testimony on any material point, and the respondent admits that he misapplied the money placed in his hands by Mrs. Chrystie for a specific purpose, and applied the same to his own personal use."

He further reports:

"First. The charge that the respondent received from his client the sum of $450, for the express purpose of depositing the same in the office of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

city chamberlain as a tender of rent on her behalf, and his ignorance of the law in that regard, affords no excuse whatever for his subsequent misapplication of the money to his personal use. This fact he admits with a complacency which betrays an utter lack of any sense of moral or professional responsibility on his part. He deliberately misapplied his client's money to his own use, and the fact that her importunities subsequently compelled him to return the greater part of it seem to me to offer no excuse or justification for his act. The transcript of the respondent's bank account shows that he misapplied the money the morning after the check was received, and his own testimony shows that he was perfectly well aware that he was doing so; his only excuse being that he thought his client would not need the money for '60 or 90 days.' * * * I therefore find and report that the first charge against the respondent has been fully sustained, and that in my opinion he should not be permitted to continue to practice as an attorney and counselor at law."

An examination of the testimony accepting the respondent's own version of the transaction justifies the conclusion to which the referee has arrived. He testified that he was retained in the latter part of May by a Mrs. Chrystie to sue for any damages which might occur by reason of the fact that she would be compelled to move before the termination of her lease; that in the latter part of June Mrs. Chrystie told him that the house wreckers were there to wreck her property, with an order from the Supreme Court; that he told Mrs. Chrystie all that he could do was to go and get an injunction to restrain the city of New York and the house wreckers from demolishing the building; that Mrs. Chrystie came to the respondent's office at about 5 o'clock, when he had the papers and affidavits for an injunction prepared; that the next day he applied to a judge to grant the injunction, but it was refused, and the following day Mrs. Chrystie moved out of the premises. He then started two suits for Mrs. Chrystie, one for $200,000 damages and the other for $150,000 damages. Subsequently, and on the 20th of January, 1910, other attorneys were substituted in his place.

The respondent does not state the date at which he made this ineffective attempt to obtain an injunction; but he testified that on the 24th of June, 1909, he received a certified check for $450 from Mrs. Chrystie; that that money was given to be placed with the chamberlain's office, and he thought he could put the money there and in that way protect his client; that he offered the chamberlain this money, but the chamberlain said he could not receive it, and the respondent then looked up the law, and found he could not deposit the money in the chamberlain's office; that he then opened an account in the Mercantile National Bank, and in the subsequent July Mrs. Chrystie told the respondent that she found out he had not deposited the money with the chamberlain, to which the respondent answered that it was so, and then told Mrs. Chrystie that he had used part of the money, but would make her payments, and would get through with it in 30, 60, or 90 days at the utmost; that Mrs. Chrystie did not say anything, except that she wanted $25, for which the respondent gave her a check dated July 19, 1909; that on September 20, 1909, he paid her $150, on September 27th $175, and on October 13, 1909, $66, reserving $34 of this fund for the services he claimed to have rendered. On cross-examination the respondent said that, about two days after he re-

ceived the check, he first went to the city chamberlain's office, but he was not sure about it, and that three or four days after that he used the money for his own account; that he used this check, with a small sum in addition, to open an account in the Mercantile Bank.

He thus swears positively that he asked for and received from his client the sum of $450, to be deposited in the office of the chamberlain to protect her interests. He does not explain in what way such a deposit would protect his client, or what possible advantage it could have been to his client to have deposited this sum of money with the chamberlain. He then swears positively that he received this check on June 24th; that on the next day he opened an account in the Mercantile Bank, and deposited that check there, and that about two days afterwards he went to the chamberlain's office and found the chamberlain would not receive it, and two or three days after that he used a considerable portion of that money for his own purposes.

His account with the Mercantile Bank shows that this testimony was false, and puts an entirely different aspect upon the transaction. That account shows that on May 7th he opened an account in the Mercantile National Bank by the deposit of $280; that by May 15th he had withdrawn about $252. It further appears that on June 25th, the day after he received the check, he deposited it to his credit in this account in the Mercantile Bank; that when he made this deposit he had a very small balance in the bank, and on the same day, June 25th, a check for $300 was charged against him at the bank, and the account was closed by his withdrawing the balance that he had on September 9th. Thus, if his account is true that he went to the chamberlain's office two days after he received the check, he had already misappropriated a considerable portion of the money, and so far as appears he had no money with which to make the deposit with the chamberlain for which he had obtained the money, and from that time on never had money to make the deposit. On June 24th, when he received this money for a specific purpose, which he at once applied to his own use, although he says he was seeing his client daily, he never informed her that he had misappropriated the money, until she found it out and charged him with it, when he says he admitted it. He presents no excuse for this misappropriation of his client's money intrusted to him for a particular purpose, except that he did not think she would want it for 30, 60, or 90 days. He does not pretend that he had sufficient money at any time to repay it, or that he had at any time offered to repay her, except as to the installments as to which he testified; and an examination of his testimony entirely justifies what was said by the referee in relation to his conduct.

But, in addition to that; I think his obtaining this money from his client under the circumstances was fraudulent. Undoubtedly this woman was in great trouble in consequence of her being turned out of the premises that she had leased by the wreckers who were engaged in tearing down the adjoining buildings. He went to a woman under these circumstances, and induced her to give him the sum of $450, which it seems she had provided to pay the rent of the premises, and which the landlord had refused, to deposit with the chamberlain. It does not appear that this deposit was to be made in view of

any particular litigation or for any particular purpose, and it is quite impossible to suppose that the respondent could have in good faith believed that a deposit of this rent with the chamberlain would in any way protect his client. He evidently saw that she had this money, and that she was in great distress because of the fact that her premises were becoming uninhabitable, and that there was thus presented an opportunity for the respondent to get her money. He acted promptly, and obtained the $450 by making a statement that it was necessary to deposit it with the chamberlain, on the next day deposited it in his own bank account, and at once drew against it for his own personal use; and he then suppressed the fact that he had not deposited the money, and did not inform his client of it until she had discovered it in some other way.

Considering the conduct of the respondent during this whole transaction, it is entirely clear that he obtained this money by trick and device; that he never intended to deposit it with the chamberlain, but promptly used it for his own purposes, and suppressed knowledge of that fact from his client, and only disgorged it after his client had herself ascertained the facts. A mere statement of these facts is sufficient to justify the conclusion that the respondent should no longer remain a member of the profession, and he is therefore disbarred. All concur.